IRWIN v. NEW YORK CENTRAL RAILROAD COMPANY, appellant.

*Common carriers — liability of carrier for damage done to goods beyond his line.*

The White Line was a through freight line composed of a number of connecting railroads of which the N. Y. C. R. R. was one. The cars were marked White Line. They were not owned in common, but each company put in a certain number. The cars run through without transhipment, and the receipts were divided between the different railroads *pro rata* per mile. When freight was taken at a way station on the N. Y. C. R. R. for this line, it was not treated as through freight, but as local until it reached the terminus of the road, where it was taken by the line as through freight. The N. Y. C. R. R. Co. had no interest in the freight beyond the terminus. The line was neither a corporation nor a partnership, but a mere co-operating arrangement. Under an arrangement with an agent of this line plaintiff shipped merchandise at Rochester for Leavenworth, Kansas. The articles shipped were delivered at the N. Y. C. R. R. station, and a receipt taken in which the N. Y. C.

R. R. Co. admitted the delivery of the cases containing them marked "T. W. Irwin, Leavenworth, Kansas, care White Line, Buffalo."    *    *    "To be transported by the N. Y. C. R. R. Co. to their warehouse at Buffalo, ready to be delivered to the party entitled to the same." The receipt also contained a provision that the N. Y. C. R. R. Co. should not be liable for loss, etc., by any other carrier or after the cases left the warehouse at Buffalo. The cases were placed in a White line car at Rochester and were damaged in Missouri by the negligence of the Missouri Pacific R. R. Co.

*Held*, that the N. Y. C. R. R. Co. were not liable for the damage.

APPEAL from a judgment for the plaintiff on the report of a referee. The facts appear in the opinion.

*A. P. Laning*, for appellant, cited *Wescott* v. *Fargo*, 63 Barb. 349; *Root* v. *G. W. Railway Co.*, 45 N. Y. 525.

*J. C. Cochrane*, for respondent, cited *T. P. & W. R. R. Co.* v. *Merriman*, 4 Am. Rep. 590; *C. & R. I. R. R. Co.* v. *Fahey*, id. 587; *Burtes* v. *B. & S. L. R. R. Co.*, 24 N. Y. 269; *Maghee* v. *C. & A. R. R. Co.*, 45 id. 514; *Root* v. *G. W. Railway Co.*, id. 524; *F. & W. R. R. Co.* v. *Hanna*, 6 Gray, 539.

TALCOTT, J. This is an action against the defendants as carriers for damages to some fruit trees, shipped by the plaintiff from Rochester in this State, to Leavenworth in Kansas. The New York Central, in conjunction with certain railway companies leading west to St. Louis, organized a fast and through freight line. The plaintiff's witness, Darling, gives, in substance, the following account of this arrangement: It is composed of the Boston and Albany, New York Central and several western railroads extending to St. Louis. Freight is transported in through cars marked "White Line." The cars are run by each of the connecting roads over its own line of road without transhipment. The receipts are divided between the different companies *pro rata* per mile. The cars used are not owned by the roads in common, but each road puts in a certain number of cars.

If freight is taken on the White Line at any station intermediate New York and Buffalo, it is regarded as local freight, and the freight to Buffalo does not go into the business of the White Line, or into the report of the witness, who is the superintendent.

It is not billed by the White Line until it arrives in Buffalo. It is treated in Buffalo as though it was first received at that point, and in such a case the defendant receives its freight from the Lake Shore

Railroad Company and has no interest in the freight west of Buffalo. The freight from the point of starting on the line of the Central road to Buffalo is paid by the Lake Shore road when it receives the property at Buffalo.

Robert Allen was agent for the White Line, and had an office in Rochester. His business was procuring freight for the White Line. He was appointed an agent by the witness Darling who was employed by the roads west of Buffalo, and neither of them was an agent authorized to receive a contract for freight in behalf of the Central Railroad Company as such. The plaintiff resides at Leavenworth, and in October, 1868, he made an agreement with Allen to ship the trees in question through to Leavenworth by the White Line.

The trees were delivered on the platform of the New York Central road, and put on board one of the cars of the company, which was one of those marked as "White Line" and running under the arrangement before specified. At the time of the receipt of the trees by the N. Y. Central Company, the plaintiff received from its agent a written receipt, headed "New York Central Railroad Company, Rochester Station, Oct. 26, 1868," acknowledging the receipt in good order, etc., of certain cases of fruit trees marked, "T. W. Irwin, Leavenworth, Kansas, care White Line, Buffalo." To the receipt was added, "to be transported by the New York Central Railroad Company to their warehouse at Buffalo, ready to be delivered to the party entitled to the same." And it was further added, "that the company is not to be held liable for the loss of said property, or for any damage or injury to the same, or for any delay in the delivery thereof by any other carrier, * * * after the same has been loaded, shipped or sent from the company's warehouse aforesaid."

This contract was signed by the New York Central Company, by its freight agent, and it is not claimed but what the plaintiff was fully aware of the terms of the contract, so far as the Central Company was concerned, and assented to the same.

By this contract, therefore, in the absence of proof of fraud or mistake, the rights and liabilities of the parties are to be determined. *Long* v. *N. Y. C. R. R. Co.*, 50 N. Y. 76; *Belger* v. *Dinsmore*, 51 id. 166, Com. of Appeals, 8 Alb. L. J. 43.

The property was duly carried by the Central Company to Buffalo, and there delivered to the Lake Shore Company as White Line frieght. The damage to the property was received beyond St. Louis,

on the Missouri Pacific railroad, to which it had been delivered by the next previous connecting road embraced in the White Line arrangement, and the injury was occasioned by negligent delay upon the Missouri Pacific road.

Under these circumstances the question arises, whether the New York Central Company is liable for the damage to the trees between St. Louis and Leavenworth. We think not. There is no doubt but that a railroad company may make itself liable in this State, as a carrier, for property to be transported beyond its line, and even beyond the lines of the State. And it is possible that a question hitherto vexed in our courts, as to whether the reception of property marked to an address beyond the line is *prima facie* evidence of a contract to carry to the place of destination, may be determined in accordance with the English authorities. But it is admitted, we believe, on all hands, that the law of itself imposes no such obligation, and that where it exists it must rest upon a contract. *Burtis* v. *B. & S. R. R. Co.*, 24 N. Y. 269; *Maghee* v. *Camden & Amboy R. R. Co.*, 45 id. 514; *Root* v. *Great Western R. R. Co.*, id. 524.

The New York Central Company, as such, made no such contract. Allen, with whom the plaintiff made the contract for transportation to Leavenworth, was not the agent of the New York Central Company, nor was he authorized to make any contract for the transportation of freight over its line. The contract made by the Central Company expressly provided against any construction which should extend its liability beyond its terminus at Buffalo; and this was in accordance with the arrangement between the several companies which had, by mutual arrangement, established the White Line. Property received intermediate Buffalo and Albany did not, according to the plaintiff's witness, enter into and become a part of the White Line traffic until it reached Buffalo, when it was received as though it first made its appearance there.

The contract of the Central Company was to deliver to the White Line at Buffalo, and it appears from the receipt that it was so addressed.

The Central Company did not, as one of the constituent parties of the White Line, transport this property from Rochester to Buffalo. It had no interest in the transportation of the property received at Buffalo by the White Line to go west, and by its contract expressly guarded itself against any liability for such property. It is expressly stated by the witness that the White Line was

neither a corporation nor a copartnership, but a mere co-operating arrangement, and whether the Central Company would be liable for damages happening to this property if it had been received by the White Line at New York or Boston, and been damaged on a road beyond the lines of the State is not the question. It would scarcely be claimed that the Central Company would be liable for property received at Cleveland to be transported to St. Louis. But why not, if it is liable as to property which it has not agreed to transport beyond its terminus, but the contrary, and which was not transported by or in the custody of the White Line over any part of the Central road? ,

We think the referee erred in holding the Central Company liable in this case, because it did not contract as a company to carry this property beyond Buffalo, but expressly rejected any further responsibility, and its interest in the White Line arrangement did not affect the property in question, as it was not carried by that line from Rochester to Buffalo, but expressly shipped by the plaintiff to be delivered to the White Line at Buffalo, he taking the individual contract of the Central Company up to that point.

If these views are correct they lead to a reversal of the judgment.

*Judgment reversed and new trial ordered before a new referee, costs to abide the event.*